# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY PETRONZIO, | ) | CASE NO. 1:14cv1202 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| CINDY SMITH, *et al.*, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Anthony Petronzio filed this action against Cindy Smith, George Smith, Phyllis Faehnrich, the Strongsville Police Department, Strongsville Prosecutor George Lowjak, Officer Jamie Buckner, and the Lawrence County Human Services Center in Pennsylvania. In the complaint, plaintiff alleges the defendants are using his identity without his consent, and have filed false harassment charges against him. He seeks an order from this Court enjoining Phyllis Faehnrich "from using the plaintiff's name," (Doc. No. 1 at 19), enjoining the criminal proceedings against him in the Berea Municipal Court, and awarding him monetary damages in the amount of $25,000,000.00.

Plaintiff also filed an application to proceed *in forma pauperis*. That application is granted.

On July 8, 2014, plaintiff filed a motion for temporary restraining order, (Doc. No. 3) asking the Court to issue an order preventing Phyllis Faehnrich, Cindy Smith, and George

Smith from using his name to create email accounts. He alleges these defendants use the accounts to send harassing emails so they can file harassment charges against him. He also contends that Cindy Smith has a power of attorney for plaintiff, which she is using to make medical and mental health decisions for him. He asks this Court to restrain her from using the power of attorney.

## I.    <u>Background</u>

Plaintiff's complaint is written as a narrative, which at times, is disjointed and difficult to decipher. Plaintiff alleges he learned from other family members that he was adopted by Phyllis Petronzio, nka Phyllis Faehnrich, and Perfetto Biff Petronzio, aka Anthony B. Petronzio. He claims these family members told him he was not the original boy they saw in the past because that boy had blond hair. Phyllis Faehnrich, however, denied plaintiff was adopted. He alleges his baptism record indicates his father's name is Anthony B. Petronzio, Phyllis Faehnrich "did not follow state and church laws requiring when a child could be baptized but needed some form of proof to start a new identity for [P]erfetto [P]etronzio." (Doc. No. 1 at 4). He states his adoptive parents "used the name of the child they wanted to adopt to use for [P]erfetto's name listing him as [A]nthony." (*Id.*)

Plaintiff alleges he suffers from congenital liver disease and wanted to learn more about his birth parents. Phyllis Faehnrich continued to deny he was adopted, so he turned to his sister Cindy Smith and her husband, George Smith. He contends they had his adoption file but denied having it in their possession. He states he was hospitalized in 2010, and his sister Cindy Smith wired $900.00 to his landlord so plaintiff would not be evicted from the house he was leasing. Thereafter, plaintiff alleges he opened an account on Facebook and conversed with

2

Cindy's son through this social media site for seven months. At that time, his nephew told him Cindy did not want him to speak to plaintiff again. Plaintiff asked to speak with Cindy but she would not respond to him. He states he tried to send her the $900.00 she paid to his landlord, but her husband George demanded $5000.00. He contends George also told him he would release plaintiff's adoption file for $5000.00. Plaintiff attempted to file charges against Cindy and George Smith, but the Strongsville police would not allow him to do so. He filed an action against the Smiths in Newcastle, Pennsylvania, but the case was dismissed for lack of jurisdiction.

Plaintiff states he discovered another account on Facebook with the name of Anthony Petronzio. He asked the Newcastle police to investigate the matter and file criminal charges. They refused.

Plaintiff alleges Cindy and George Smith agreed to give his adoption file to a mutual friend. This friend allegedly sent the file to plaintiff's psychiatrist and therapist at the Lawrence County Department of Human Services. He claims the doctor sent the file back to Huron County, Ohio. Plaintiff called the Huron County Clerk of Courts, and a deputy clerk informed him that they received a letter from plaintiff's physicians but did not receive the file. Plaintiff attaches to his complaint a letter from his psychiatrist and therapist that requested the court's assistance in helping Anthony Petronzio gain access to information regarding his birth parents. (Doc. No. 1 at 2.) Plaintiff filed a lawsuit against the Lawrence County Human Services Center. After filing the lawsuit, his psychiatrist had plaintiff involuntarily committed to Jamison Hospital for mental health treatment.

While he was hospitalized, police accused him of sending harassing messages. He claims the Newcastle police questioned him and charged him with harassment and two counts of

aggravated assault. Documents imbedded into plaintiff's complaint, and referred to therein, reflect that plaintiff was charged with two counts of disorderly conduct and two counts of harassment. (Doc. No. 1 at 11). The charges were withdrawn on May 9, 2013. (*Id.*). Plaintiff denies having committed the acts described in the criminal complaint, but states he agreed to leave the State of Pennsylvania in exchange for dismissal of the charges.

Plaintiff alleges that, after he moved to Ohio in January 2013, he began receiving phone calls from Jamie Buckner of the Newcastle Police Department. Plaintiff alleges this officer had previously assaulted him while he was in the hospital in Newcastle. He contends Officer Buckner repeatedly called him and accused him of sending harassing emails to family members. Plaintiff denied the accusation and told Buckner not to contact him again. Plaintiff went to the Brecksville Police Department and told officers he was being harassed by Buckner. Brecksville officers asked plaintiff for identification and discovered an active warrant for plaintiff's arrest from Strongsville for telephone harassment and aggravated menacing. Those charges were brought by Cindy Smith. He was then held in custody for the Strongsville police. The charges are pending against plaintiff in the Berea Municipal Court. Plaintiff attempted to file criminal charges against Cindy Smith, but Strongsville police would not accept them.

Plaintiff filed this action asking the Court to prevent the defendants from using his name in emails and internet sites, and to stop the proceedings in the Berea Municipal Court. He asserts that Strongsville "prosecutors [have] "violated the plaintiff['s] right to make a statement and file charges for felony violations but charged the plaintiff with falsified charges[.]" (Doc. No. 1 at 20). He states the Strongsville Police Department "is in violation of making [a] false arrest, cruel punishment and fabricating evidense [sic]." (*Id.*). He asserts his adoptive mother, Phyllis Faehnrich, "is i[n] violation of not turning over doctor request[ed] records and revealing

the plaintiff was adopted." (*Id*.at 21). He contends Cindy and George Smith "are in violation of state and federal laws of extortion with the payment of personal records." (*Id*.). He claims Lawrence County Human Services "violated the plaintiff's right to return to [Newcastle, PA]." (*Id*.). He asserts Newcastle Police and Jamie Buckner abused him while he was in the hospital, hitting him in the head and causing him to be admitted to the Intensive Care Unit. (*Id*.). He asserts Jamie Buckner "is [in] violation of using Facebook and email documents that are not the plaintiff[']s[.] (Doc. No. 1 at 21). Finally, he asserts "knowing that a warrent [sic] was out for him in [Strongsville,] Ohio . . . since they put the plaintiff's name in LEADS, but with no proof or court appearance did not investigate where these emails came from but later dropped the charges after the plaintiff had a court date in [which] he was not present due to the illegal document from human services [L]awrence [C]ounty [E]dgewood [C]enter banning the plaintiff to return to [Pennsylvania] in which he has his property." (*Id*.)

## II.    <u>Standard of Review</u>

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 564 (2007).

A pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations but must provide more than an unadorned, the defendant unlawfully harmed me accusation. *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id*. In reviewing a complaint, the Court must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc*., 151 F.3d 559, 561 (6th Cir. 1998).

## III.   <u>Analysis</u>

Federal courts are courts of limited jurisdiction and, unlike state trial courts, they do not have general jurisdiction to review all questions of law. *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, they have only the authority to decide cases that the Constitution and Congress have empowered them to resolve. *Id.* Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Generally speaking, the Constitution and Congress have given federal courts authority to hear a case only when diversity of citizenship exists between the parties, or when the case raises a federal question. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The first

type of federal jurisdiction, diversity of citizenship, is applicable to cases of sufficient value between "citizens of different states." 28 U.S.C. § 1332(a)(1). To establish diversity of citizenship, the plaintiff must demonstrate that he is a citizen of one state and all of the Defendants are citizens of other states. The citizenship of a natural person equates to his domicile. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). The second type of federal jurisdiction relies on the presence of a federal question. This type of jurisdiction arises where a "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28 (1983).

Diversity of citizenship does not exist in this case. "Diversity of citizenship . . . exists only when no plaintiff and no defendant are citizens of the same state." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). Plaintiff is currently a citizen of the state of Ohio. Although he does not provide the citizenship of the defendants, it is apparent that the Strongsville Police Department is a subunit of an Ohio municipality and Strongsville Prosecutor George Lowjak is an Ohio citizen. Diversity of citizenship is not complete. Even if plaintiff claimed to be a citizen of Pennsylvania residing in Ohio, diversity of citizenship would not be lacking because the Lawrence County Human Services Center is a subunit of a Pennsylvania municipality. Federal court jurisdiction cannot be based on diversity of citizenship.

If federal jurisdiction exists in this case, it must be based on a claimed violation of federal law. In determining whether a claim arises under federal law, the Court looks only to the "well-pleaded allegations of the complaint and ignore[s] potential defenses" a defendant may raise. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007). Although the well-

7

pleaded complaint rule focuses on what the plaintiff alleges, it allows the Court to look past the words of the complaint to determine whether the allegations ultimately involve a federal question. *Ohio ex rel. Skaggs*, 549 F.3d at 475. In addition to causes of action expressly created by federal law, federal-question jurisdiction also reaches ostensible state-law claims that: (1) necessarily depend on a substantial and disputed federal issue, (2) are completely preempted by federal law, or (3) are truly federal-law claims in disguise. *See Mikulski*, 501 F.3d at 560; *City of Warren v. City of Detroit*, 495 F.3d 282, 286 (6th Cir. 2007).

Here, plaintiff is proceeding *pro se* and *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). Indeed, this standard of liberal construction "requires active interpretation" to construe a *pro se* petition to encompass any allegation stating federal relief. Id. (internal citation and quotation marks omitted). Even with that liberal construction, however, plaintiff failed to identify a viable federal question in this case.

The only possible federal cause of action plaintiff may be attempting to bring would arise under 42 U.S.C. § 1983. He fails, however, to state a claim upon which relief may be granted. To establish a *prima facie* case under 42 U.S.C. § 1983, plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

Generally, to be considered to have acted "under color of state law," the person must be a state or local government official or employee. Cindy Smith, George Smith, and Phyllis Faehnrich, however, are not state or local government officials or employees. They are private citizens. A private party may be found to have acted under color of state law to establish the first element of this cause of action only when the party "acted together with or . . . obtained

8

significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922, 937 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). Plaintiff has not alleged any facts to suggest these defendants could be considered to have acted under color of state law. Plaintiff cannot maintain claims against them for civil rights violations under 42 U.S.C. § 1983.

George Lowjak appears to be a Strongsville prosecutor. Prosecutors are also entitled to absolute immunity from damages for initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in prosecuting them in court. *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). This duty could not be properly performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. *Imbler*, 424 U.S. at 424-25; *Skinner*, 463 F.3d at 525. Absolute immunity is, therefore, extended to prosecuting attorneys when the actions "in question are those of an advocate." *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) (citation omitted). Immunity is granted not only for actions directly related to initiating a prosecution and presenting the State's case, but also to activities undertaken "in connection with [the] duties in functioning as a prosecutor[.]" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The immunity also reaches beyond the criminal process to conduct in civil proceedings where a

9

government attorney is operating in an enforcement role in "initiating . . . judicial proceedings[,]" *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit[.]" *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

In this case, plaintiff does not allege any facts that specifically mention actions taken by Lowjak. He objects to his prosecution by the City of Strongsville, and the City's general reluctance to allow plaintiff to file criminal charges against his sister and mother. These actions directly relate to the initiation of a criminal case. To the extent this action can be attributed to Lowjak, he is absolutely immune from damages.

Plaintiff must also satisfy the second element of a § 1983 action by identifying a particular constitutional right he believes the defendants violated. He first claims the Strongsville police "violated plaintiff['s] right to make a statement and file charges for felony violations but charged plaintiff with falsified charges." (Doc. No. 1 at 20). Plaintiff, however, has no right protected by the Constitution to demand police arrest another individual for committing a crime. *Howard ex rel. Estate of Howard v. Bayes*, 457 F.3d 568, 575 (6th Cir. 2006) ("The benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause") (citation and internal quotation marks omitted). Furthermore, there is no "guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). A police officer executing an arrest warrant is not required by the Constitution to investigate independently every claim of innocence, nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. *Id.* Plaintiff has not identified a constitutional claim upon which he can base a civil rights action against the Strongsville Police Department.

10

In addition, Plaintiff states that the Strongsville Police Department "is in violation of making false arrest[,] cruel punishment[,] and fabricating evidense [sic]." (Doc. No. 1 at 20). A false arrest claim under § 1983 requires a plaintiff to prove that the arresting officer lacked probable cause to arrest him. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest . . . made pursuant to § 1983." *Richardson v. Nasser*, 421 F. App'x 611, 616 (6th Cir. 2011) (citation and quotation marks omitted) (alteration in original). Plaintiff was taken into custody pursuant to a warrant issued for his arrest from the City of Strongsville.

Plaintiff's reference to "cruel punishment" could be an attempt to assert a claim under the Eighth Amendment. Although the Eighth Amendment's protections apply specifically to post-conviction inmates, *see generally, Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992), the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994); *see generally, Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation and quotation marks omitted). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth the

11

framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation and quotation marks omitted). Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* at 20. Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id*. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Plaintiff does not appear to be challenging a condition of confinement in the Strongsville City Jail. In fact, plaintiff alleges he posted bond a short time after his arrest and was released from custody. The Eighth Amendment, as applied through the Fourteenth Amendment, is not applicable to this case.

Furthermore, plaintiff objects to the evidence being gathered to support the charges against him, and asks this Court to stop any further proceedings in the Berea courts. A federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971). When a person is the target of an ongoing state action involving important state matters, he or she cannot interfere with the pending state action by maintaining a parallel federal

action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state defendant files such a case, *Younger* abstention requires the federal court to defer to the state proceeding. *Id.; see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if: (1) the state proceedings are on-going; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interfere[s] with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

All three factors supporting abstention are present. Plaintiff admits that the criminal action against him is still pending, and this Court acknowledges that state court criminal matters are of paramount state interest. *See Younger*, 401 U.S. at 44-45. The third requirement of *Younger* is that plaintiff must have an opportunity to assert his federal challenges in the state court proceedings. The pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the federal claims. *Moore v. Sims*, 442 U.S. 415, 430 (1979). The burden at this point rests on the plaintiff to demonstrate that state procedural law bars presentation of his claims. *Pennzoil*, 481 U.S. at 14. When a plaintiff has not attempted to present his federal claims in the state court proceedings, the federal court should assume that state procedures will afford an adequate remedy, in the absence of "unambiguous authority to the contrary." *Pennzoil*, 481 U.S. at 15. Here, there has been no showing that the claims asserted by plaintiff in this federal lawsuit are barred in the state action. The requirements of *Younger* are satisfied, and this Court must abstain from interfering in any pending state court criminal action against the plaintiff.

The only remaining defendants against whom a § 1983 action could possibly be maintained are residents of Pennsylvania. This Court is not the proper venue to bring claims against the Newcastle Police Department, Newcastle Police Officer Buckner, or the Lawrence County Human Services Center. Pursuant to 28 U.S.C. § 1391(b), a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants reside in the same state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the Court's personal jurisdiction with respect to such action.  These defendants are residents of the state of Pennsylvania. The actions giving rise to the claims against them occurred in Pennsylvania. They have no apparent connection to the State of Ohio. Consequently, the Western District of Pennsylvania is the only district in which the claims against these defendants may be brought.

## IV.    Temporary Restraining Order

Finally, plaintiff moves this Court for a temporary restraining order pursuant to Rule 65(b) of the Federal Rules of Civil Procedure. Rule 65(b) permits a party to seek injunctive relief to prevent immediate and irreparable injury. A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo. The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature. In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant has shown irreparable injury; (3)

14

whether the issuance of a preliminary injunction [or TRO] would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). These four considerations are not required elements of a conjunctive test but are rather factors to be balanced. *Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001).

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (quoting *Stenberg v. Checker Oil Co*., 573 F.2d 921, 925 (6th Cir. 1978)) (further citation omitted).

In this case, the Court has determined plaintiff failed to state a claim upon which relief may be granted against Phyllis Faehnrich, Cindy Smith or George Smith. Because a temporary restraining order is issued only to preserve the status quo until the Court can render a decision on the merits of the claim, the motion for temporary restraining order is **denied**.

## V.   <u>Conclusion</u>

For all the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is **granted**, and his motions for a temporary restraining order (Doc. No. 3) and for appointment of counsel (Doc. No. 5) are **denied**. Plaintiff's claims against Phyllis Faehnrich, Cindy and George Smith, George Lowjak, and the Strongsville Police Department are **dismissed with prejudice** pursuant to 28 U.S.C. § 1915(e). Plaintiff's claims against the Pennsylvania defendants are **dismissed without prejudice**. Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from

15

this decision could not be taken in good faith.

**IT IS SO ORDERED**.

**Dated: July 11, 2014**

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**